1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   GRAHAM WEBB INTERNATIONAL,                CASE NO. 09cv1822-IEG(RBB)
     INC.,
12                                             Order Granting in Part Defendant's
                                    Plaintiff,  Motion to Dismiss; Denying as Moot
13          vs.                                Plaintiff's Motion for Preliminary
                                               Injunction
14   C.B. SULLIVAN COMPANY, INC.,

15                                 Defendant.

16

17          Plaintiff, Graham Webb International, Inc. ("GWI"), moves the Court for a preliminary

18   injunction staying a pending arbitration proceeding between the parties before the American

19   Arbitration Association ("AAA") in Minnesota.  Defendant, C.B. Sullivan Company, Inc.

20   ("CBS"), moves the Court to dismiss Plaintiff's complaint for lack of personal jurisdiction,

21   pursuant to the first-to-file rule, under the doctrine of forum non conveniens, and based on the

22   Federal Arbitration Act.  In the alternative, CBS asks the Court to transfer this action to the U.S.

23   District Court for the District of New Hampshire. The parties have filed opposition and reply

24   briefs with regard to both motions.

25          The Court heard oral argument on the parties' motions on September 30, 2009.  For the

26   reasons set forth herein, the Court GRANTS Defendant CBS's motion to dismiss based upon the

27   Federal Arbitration Act, DENIES Defendant's motion to dismiss in all other regards, and DENIES

28   AS MOOT Plaintiff's motion for preliminary injunction.

### *Background*

*The Agreements*

GWI is a manufacturer of beauty supply products.  CBS is a full-service distributor of wholesale beauty supply products throughout New England.  In February 1998, CBS and GWI entered into a Distribution Agreement (the "1998 Distribution Agreement").  The 1998 Agreement granted CBS exclusive rights to distribute GWI products to both professional stores and salons in Massachusetts and to professional stores only in New Hampshire, Vermont, and Maine. [Declaration of of Joanne Caruso in Support of Motion for Preliminary Injunction ("Caruso Decl."), Exhibit 1A.]  The 1998 Distribution Agreement did not grant CBS any right to distribute GWI products to salons in New Hampshire, Vermont, or Maine.  The 1998 Distribution Agreement contained an arbitration provision which states as follows:

> All disputes and claims relating to or arising under or out of this Agreement shall be fully and finally settled by arbitration in Minneapolis, Minnesota pursuant to the Rules of commercial arbitration of the American Arbitration Association and the terms of the Federal Arbitration Act.  The decision of the arbitrator or arbitrators shall be final and may be enforced by any court of competent jurisdiction. The foregoing paragraph of this Section shall survive any termination of this Agreement.

[Caruso Decl., Exhibit 1A, page 11, ¶ 22.]  This agreement expired in 2003, but GWI and CBS continued to conduct its distribution relationship in accordance with the agreement.

On August 16, 2004, GWI entered into a distribution agreement with another distributor of beauty products, Kaleidoscope (the "2004 Kaleidoscope Agreement").  [Caruso Decl., Exhibit 1C.]  The 2004 Kaleidoscope Agreement granted Kaleidoscope the exclusive right to sell certain GWI products to professional salons in New Hampshire, Vermont, and Maine.  The 2004 Kaleidoscope Agreement also contained an arbitration provision, which states as follows:

> All disputes among the parties hereto arising under this Agreement shall be settled by arbitration or litigation according to the Rules for Arbitration attached to this Agreement as Exhibit "H" and incorporated herein.
>
> All proceedings and hearings will take place in San Diego County, California. The parties elect to have the substantive law of California apply to the arbitration, but the parties agree that activities undertaken pursuant to this Agreement in fact affect Interstate commerce and the parties elect to apply the procedural law of the Federal Arbitration Act.  The parties agree that arbitration can be compelled by a court located in San Diego County, California, that arbitration cannot be avoided by the filing of any other lawsuit or proceeding, or the involvement or lack of involvement of any other party, and that provisions or

1    ancillary remedies can be sought without waiver of arbitration rights.
     [Id., p. 15, ¶ 23.][1]

2
3          On November 2, 2005, GWI, CBS, and Kaleidoscope entered into an agreement whereby

4    most of Kaleidoscope's rights to distribute products to salons in New Hampshire, Vermont, and

5    Maine under the 2004 Kaleidoscope Agreement were assigned to CBS (the "Assignment

6    Agreement").  [Caruso Decl., Exhibit 1D.]  The Assignment Agreement further provided that it

7    would be necessary to amend the underlying 1998 Distribution Agreement to reflect the change in

8    distribution rights:

9          To complete this transaction, it will be necessary to make certain amendments to
           the distribution agreements to reflect the change in distribution rights.  In this
10         regard, we will need to amend the CB Sullivan Distribution Agreement to include
           salon rights for Maine, Vermont, and New Hampshire; in the case of the
11         Kaleidoscope Distribution Agreement, we will need to amend the distribution
           agreement to delete the salon sales rights for all brands except the Graham Webb
12         Classic Line.  The parties agree to execute such amendments, and sign such other
           documents as may be necessary to complete this transaction.

13   [Id., p. 3.]  This Assignment Agreement contained yet a third arbitration provision stating that

14   "[i]n the event of any dispute arising from or pertaining to this agreement, the parties agree to

15   submit such dispute to binding arbitration before the American Arbitration Association in

16   accordance with its rules for commercial matters."

17   *Litigation History*

18         On January 31, 2007, GWI notified CBS that it was unilaterally terminating the parties'

19   distribution relationship effective April 1, 2007.  [Complaint, ¶ 8.]  On March 21, 2007, CBS sued

20   GWI in New Hampshire state court, asserting various claims arising out of GWI's termination of

21   CBS's distribution rights.  GWI removed the case to federal court, and then moved to dismiss the

22   complaint arguing the claims must be submitted to arbitration based upon the clauses of the 1998

23   Distribution Agreement, the 2004 Kaleidoscope Agreement, and/or the Assignment Agreement.

24   [Plaintiff's Request for Judicial Notice in Support of Motion for Preliminary Injunction, Exhibit B,

25   p.2.]

26         The District Court in New Hampshire granted in part GWI's motion to dismiss and

27   _____

28         [1]GWI was located in Minneapolis, Minnesota at the time it entered into the original 1998
     Distribution agreement with CBS.  Shortly thereafter, GWI relocated its offices to San Diego.

1    remanded the case for arbitration in accordance with the parties' agreements.  [Plaintiff's Request

2    for Judicial Notice in Support of Motion for Preliminary Injunction, Exhibit D.]  In compelling

3    arbitration, the district court first determined that although the 1998 Distribution Agreement

4    expired in 2003, the parties "continued a course of dealing prescribed by that contract" under an

5    implied-in-fact contract.  [Id. at p.8.]  Thus, the court found the parties were bound by the terms of

6    the 1998 Distribution Agreement, including its arbitration provisions.  The Court then considered

7    whether the parties were bound by the arbitration provision in the 2004 Kaleidoscope Agreement

8    based upon the Assignment Agreement.  The court concluded that as an assignee, CBS's rights

9    against GWI were subject to all of the limitations of the assignor's rights.  "Consequently, absent

10   evidence that the parties specifically intended otherwise, Sullivan would, as the assignee of all of

11   Kaleidoscope's rights under the Kaleidoscope Distribution Agreement, be bound by that

12   agreement's arbitration provisions."  [Id. at pp. 11-12.]

13          Finally, the court examined the Assignment Agreement for evidence of GWI and CBS's

14   intent to submit to arbitration of any disputes.  The court noted the Assignment Agreement stated

15   the parties would amend their previously-existing distribution agreements, to reflect the change in

16   distribution rights, and found this language evidenced an intent that the parties be bound by the

17   original 1998 Distribution Agreement:

18          The assignment Agreement's language quoted above plainly demonstrates that the
             parties intended Sullivan's newly-acquired distribution rights to be governed by the
19          Sullivan Distribution Agreement (or the implied-in-fact contract that replaced it
             upon ... its expiration) – including, of course, the [Sullivan Distribution
20          Agreement]'s  arbitration provisions.  That is, the parties unmistakably
             contemplated amending Sullivan's existing distribution agreement with GWI to
21          include the newly-acquired distribution rights.  Consequently, any disputes relating
             to, or arising under or out of, Sullivan's distribution of GWI's products in the New
22          England region would be governed by the SDA.

23   [Id. at p. 13.]  Finally, the Court noted the existence of the broad arbitration clause in the

24   Assignment Agreement, and found that "to the extent there is any confusion about what the parties

25   intended when they executed the Assignment Agreement, that, too, must be arbitrated."  [Id. at 13-

26   14.]

27          The New Hampshire court granted the motion to dismiss to the extent it sought an order

28   remanding the case for arbitration, and administratively closed the case "subject to reopening upon

motion of either party after Sullivan's claims have been fully arbitrated."  [Id. at p. 15.]

*The Minnesota Arbitration*

On June 25, 2008, CBS filed a Demand for Arbitration with the AAA in Minnesota as provided for in the arbitration clause of the 1998 Distribution Agreement.  [Caruso Decl., Exhibit 1.]  On July 14, 2008, GWI filed an objection to the AAA's jurisdiction over CBS's claims based upon termination of the distribution rights under the 2004 Kaleidoscope Agreement and subsequent Assignment Agreement (i.e. the right to distribute products to *salons* in New Hampshire, Vermont, and Maine).  GWI argued that CBS was required to pursue its rights under the 2004 Kaleidoscope Agreement and subsequent Assignment Agreement in San Diego, under the rules set forth in the 2004 Kaleidoscope Agreement.

The parties engaged in mediation, which was unsuccessful, and on July 23, 2009, CBS reinstated the Minnesota arbitration.  The AAA has notified the parties that it will proceed with the arbitration of the entire dispute in Minnesota, including the question of the scope of the issues properly before the arbitrators in that venue, and has asked the parties to select an arbitration panel.

*The current litigation*

On August 10, 2009, GWI filed an action in San Diego County Superior Court, seeking a declaration that the claims arising out of the 2004 Kaleidoscope Agreement must be arbitrated in San Diego under the rules set forth in that Agreement and enjoining the AAA in Minnesota from arbitrating such dispute.  On August 21, 2009, CBS removed the action to this Court.

Plaintiff GWI then filed a motion for preliminary injunction, to enjoin the AAA proceedings in Minnesota.  Defendant CBS moved the Court, instead, to dismiss this action on several bases.  Defendant CBS also filed a motion in the district court in New Hampshire, asking that court to reopen its case and to compel arbitration of all claims in Minnesota.  Plaintiff GWI has filed an objection to the Defendant's request to reopen and clarify in the New Hampshire court.  The court in New Hampshire has not yet taken action on Defendant's motions, and Defendant has filed a notice of its intent to file a reply brief.

1

***<u>Defendant CBS's Motion to Dismiss</u>***

2   Defendant CBS moves to dismiss the Complaint based on lack of personal jurisdiction,

3   pursuant to the first-to-file rule, under the doctrine of forum non conveniens, and based on the

4   Federal Arbitration Act.  Alternatively, CBS requests this Court decline jurisdiction and transfer

5   the action to the United States District Court for the District of New Hampshire, where the parties

6   previously litigated the question of whether the arbitration clauses in the various agreements

7   required them to arbitrate their dispute.

8       A.    <u>Personal jurisdiction</u>

9   Defendant CBS first argues the Court lacks personal jurisdiction over it, and thus moves to

10  dismiss the Complaint under Fed. R. Civ. P. 12(b)(2).  A federal district court exercising diversity

11  jurisdiction has personal jurisdiction over a non-resident defendant where jurisdiction is proper

12  under the forum state's long-arm statute.  <u>Fireman's Fund Ins. Co. v. Nat'l Bank</u>, 103 F.3d 888,

13  893 (9th Cir. 1996).  Because California's long-arm statute extends jurisdiction to the full extent

14  allowable under the due process clause of the Fourteenth Amendment, Cal. Civ. Code § 410.10,

15  the question is whether the exercise of personal jurisdiction over CBS in this case comports with

16  due process.  <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1155 (9th Cir. 2006).

17  The burden is upon plaintiff to demonstrate the exercise of jurisdiction is reasonable.

18  <u>Harris Rutsky & Co. Ins. Svcs. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003).

19  Plaintiff need only make a *prima facie* showing that the exercise of personal jurisdiction is proper

20  in order to withstand a motion to dismiss under Rule 12(b)(2).  <u>Id</u>.  Specific jurisdiction exists if

21  the cause of action arises out of the defendant's activities in the forum state.  <u>Fireman's Fund Ins.</u>

22  <u>Co.</u>, 103 F.3d at 893-94.  General jurisdiction exists when, regardless of where the particular

23  events giving rise to the litigation occurred, defendant has "substantial" or "continuous and

24  systematic" contact with the forum state.  <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S.

25  408, 414 (1984).  Because a plaintiff can more easily demonstrate the existence of specific

26  jurisdiction, rather than general jurisdiction, the Court will first determine if Defendant's contacts

27  satisfy the standard for exercise of specific personal jurisdiction.

28  The Ninth Circuit has established a three-pronged test for analyzing claims of specific

personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).  Under the first prong, plaintiff must establish *either* that the defendant "purposefully availed" itself of the privilege of conducting activities in California, *or* that the defendant "purposefully directed" its activities toward California.  Id.

Because this is an action relating to contractual relations, the court will utilize the "purposeful availment" standard to determine if it has specific personal jurisdiction over the defendant. Schwarzenegger, 374 F.3d at 802.  "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state'." Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990)).  "[T]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).

In support of its motion to dismiss, Defendant submitted a declaration from its President, Charles B. Sullivan, stating in summary fashion that "CBS does not do business in California, maintains no offices, employs no staff, has not designated an agent for service of process, and does not own any property or other assets in California."  [Declaration of Charles B. Sullivan in Support of Motion to Dismiss ("Sullivan Decl."), ¶ 3.]  Mr. Sullivan further states that "[n]o representative of CBS has ever conducted business in California" and "[n]one of the agreements CBS entered into with Graham Webb International, Inc. were either executed or performed in California, nor did performance of the agreements require CBS to engage in any substantial business in California."  [Id. ¶¶ 4-5.]

In response to CBS's motion, Plaintiff GWI submitted declarations disputing the extent of

CBS's contacts with California.  Plaintiff's declarations detail the following facts regarding the scope of CBS's contacts with California within the context of the parties' business relationship:

- Twice per month, CBS submitted to GWI in California product purchase orders, which were then processed in California by GWI and shipped from California [Declaration of Beverlee Abell in Support of Plaintiff's Opposition to Motion for Preliminary Injunction ("Abell Decl."), ¶ 11];
- CBS representatives Jeff Sullivan and Janet Caldwell regularly placed calls to GWI representative Beverlee Abell in California concerning issues relating to distribution and operations [Abell Decl., ¶ 6];
- CBS representatives attended at least two GWI promotional product meetings in California related to the Bibo Cosmetics and Back to Basics product launches;
- CBS representatives attended GWI distributor conferences in California, the coordination of which was primarily conducted in California [Abell Decl., ¶¶ 12,14; Declaration of Richard Kornbluth in Support of Plaintiff's Opposition to Motion for Preliminary Injunction ("Kornbluth Decl."), ¶ 12];
- CBS representatives Jeff Sullivan and C.B. Sullivan attended and participated in Distributor Counsel Meetings together with GWI and other GWI distributors in California [Kornbluth Decl., ¶ 12];
- CBS representatives Jeff Sullivan and C.B. Sullivan met with GWI representative Richard Kornbluth and others in or around 1999 or 2000 in Carlsbad to request that their distribution agreement not be terminated [Kornbluth Decl., ¶ 11];
- CBS representative C.B. Sullivan met with GWI representative Richard Kornbluth in late 2005 regarding the assignment to CBS of Kaleidoscope's distribution rights in Vermont, New Hampshire and Maine [Kornbluth Decl., ¶ 4].

In support of its reply, Defendant CBS submitted declarations by its representatives pointing out that at the time the parties entered into their 1998 Distribution Agreement, Plaintiff GWI was a Delaware corporation based in Minnesota. [Declaration of Charles B. Sullivan in Support of Reply ("Sullivan Reply Decl."), ¶ 2.]  Defendants' representatives assert that after GWI relocated to California, the bulk of their continuing contacts were limited to telephone and email exchanges, its contacts were primarily with GWI representatives located in New England, and it "rarely communicated" with GWI representatives in California.  [Sullivan Reply Decl., ¶ 3; Declaration of Jeffrey Sullivan in Support of Reply, ¶¶ 3-6.]  Mr. Charles Sullivan also clarifies that his meeting with Mr. Kornbluth to discuss the assignment of the Kaleidoscope distribution rights occurred in California because he was in the State receiving chemotherapy treatment for cancer.  [Sullivan Reply Decl., ¶ 4.]

Ordinarily, telephone, mail, and email communications of a nonresident are insufficient to establish purposeful availment.  Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985).  Neither temporary physical presence of a party, nor other types of fortuitous contact are sufficient to establish personal jurisdiction.  FDIC v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1443

- 8 -

(9th Cir. 1987).  Here, however, the facts demonstrate CBS had more than mere sporadic or fortuitous contact with California.  From the time GWI relocated to California in 1998, shortly after the parties entered into the 1998 Distribution Agreement, CBS distributed GWI's products through orders placed with GWI in California, and with products being shipped from California. Although Defendant's President, Charles Sullivan, was in California for circumstances unrelated to the parties' distribution relationship, he met with GWI representatives to discuss CBS's acquisition of Kaleidoscope's distribution rights in New England, the very agreement giving rise to this action.  See Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir. 1991) (court correctly found defendant purposefully availed himself of the privilege of doing business in California where the subject matter of the contract, the making, editing, and production of a movie, would have continuing and extensive involvement with the forum).  Thus, the Court finds Plaintiff has made a *prima facie* showing that Defendant CBS purposefully availed itself of the forum so as to justify the exercise of specific personal jurisdiction.

CBS argues that even if it purposefully availed itself of the forum, the exercise of jurisdiction would not be reasonable.  The Ninth Circuit has enumerated seven factors for the court to consider to determine whether the exercise of jurisdiction would be reasonable:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007).  Once plaintiff has established the first two prongs of the specific personal jurisdiction inquiry (i.e. purposeful availment and that the claim arose out of contact with the forum state), the burden shifts to defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Schwarzenegger, 374 F.3d at 802.

Defendant CBS has not made a "compelling case" that the exercise of jurisdiction by this Court would be unreasonable.  As explained above, Defendant CBS entered into a distribution agreement (the Assignment Agreement) with a company in California, after negotiations which occurred in California.  Not only the Assignment Agreement, but also the course of the parties'

1  prior relationship under the 1998 Distribution Agreement, involve the ongoing distribution of

2  products flowing from California.  This is purely a contract dispute, requiring few witnesses.  The

3  presence of CBS's President, who negotiated the Assignment Agreement, as well as CBS's

4  counsel in California also weighs against a finding of undue hardship.  Therefore, the Court finds

5  it has specific personal jurisdiction over Defendant CBS for purposes of resolving the claims in

6  this case.  The Court DENIES Defendant CBS's motion to dismiss for lack of jurisdiction.

7  Because the Court finds specific personal jurisdiction exists under the standards discussed above,

8  the Court will not address Plaintiff's alternative arguments regarding the forum selection clause in

9  the 2004 Kaleidoscope Agreement or the existence of general jurisdiction over CBS.

10        B.     First-to-File Rule

11        Defendant CBS alternatively asks the Court to dismiss this case under the first-to-file

12  doctrine based upon its previously filed New Hampshire action.  Under the first-to-file doctrine,

13  "when cases involving the same parties and issues have been filed in two different districts, the

14  second district court has discretion to transfer, stay, or dismiss the second case in the interest of

15  efficiency and judicial economy."  Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 770 (9th

16  Cir. 1997).  Defendant CBS argues the parties and issues in this case are identical to those

17  addressed by the district court in New Hampshire, such that this Court should decline to exercise

18  jurisdiction and should, instead, defer to the New Hampshire court.

19        In opposition to Defendant CBS's motion, Plaintiff GWI points out that the New

20  Hampshire case has been "administratively closed" with the provision that it may be reopened

21  following arbitration.  In addition, Plaintiff GWI argues the issue presented in this case, whether

22  the claims arising out of the 2004 Kaleidoscope Agreement must be arbitrated in San Diego

23  pursuant to that Agreement's clause rather than before AAA Minnesota as called for in the 1998

24  Distribution Agreement, were not presented in the New Hampshire case.  Plaintiff argues

25  application of the first-to-file rule will not advance judicial economy because its preliminary

26  injunction motion here is fully briefed and ready for hearing, and any transfer to New Hampshire

27  will lead to additional delay.

28        An order administratively closing a case pending court-compelled arbitration has no impact

upon the court's continuing jurisdiction over the action.  <u>Dees v. Billy</u>, 394 F.3d 1290, 1294 (9th Cir. 2005).  Thus, there is no jurisdictional bar to the New Hampshire court reopening the case before it to clarify whether the arbitration it compelled should be conducted in Minnesota or San Diego.  Nonetheless, the New Hampshire court has not yet considered Defendant CBS's motion to reopen the case.  As explained in detail below, the Court finds the parties' agreements manifest a clear intention that the current dispute be resolved by arbitration according to the terms of the Assignment Agreement. Therefore, because this Court can readily resolve the issues presented, the Court finds judicial efficiency is best served by going forward in this Court rather than deferring to the court in New Hampshire.[2]  The Court DENIES Defendant CBS's motion to dismiss based on the first-to-file rule.

C.     Forum Non Conveniens

Defendant CBS also moves to dismiss based on the common law doctrine of *forum non conveniens*.  As Plaintiff GWI points out in its opposition, this doctrine applies only in cases where the alternative forum is abroad.  <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430 (2007).  Where a party seeks transfer from one district court to another within the federal court system, the proper analysis is under 28 U.S.C. §§ 1404(a) or 1406(a). <u>Id</u>.  Thus, the Court DENIES Defendant CBS's motion to dismiss based upon the doctrine of *forum non conveniens*.

D.     Federal Arbitration Act

Defendant CBS argues the Court must dismiss this action pursuant to the Federal Arbitration Act ("FAA") because the Assignment Agreement specifically provides that all disputes under that Agreement must be submitted to binding arbitration before the AAA in accordance with its rules for commercial matters.  CBS, therefore, argues any disagreement regarding whether the

---

[2]Plaintiff GWI asserts the forum selection clause in the 2004 Kaleidoscope Agreement requires the issues raised by the Complaint to be litigated in this Court.  The Court notes, however, that the forum selection clause in the 2004 Kaleidoscope Agreement is "permissive" rather than "mandatory" because it provides only that a court in San Diego County "can" compel arbitration. <u>See</u> <u>Docksider, Ltd. v. Sea Technology, Ltd.</u>, 875 F.2d 762, 764 (9th Cir. 1989) ("When only jurisdiction is specified, the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.").  Thus, the clause does not prohibit the parties from litigating the issue of arbitrability in another forum.

1    parties intended CBS's newly-acquired distribution rights to be governed by the 1998 Distribution

2    Agreement or the 2004 Kaleidoscope Agreement must itself be submitted to arbitration.  In

3    opposition, Plaintiff GWI argues this Court must, in the first instance, determine whether the 2004

4    Kaleidoscope Agreement's arbitration provision encompasses the parties' dispute relating to the

5    distribution of products to salons in Maine, Vermont, and New Hampshire.

6            A dispute about whether the parties are bound by a particular arbitration clause, as well as

7    a disagreement about whether an arbitration clause in an otherwise binding contract applies to a

8    particular controversy, are both for the court to determine.  Howsam v. Dean Witter Reynolds,

9    Inc., 537 U.S. 79, 84 (2002).  Under the FAA, however, where parties "clearly and unmistakably"

10   provide that arbitrators are to decide matters of arbitrability, courts are divested of their authority

11   to determine whether disputes are arbitrable.  AT&T Technologies, Inc. v. Communications

12   Workers, 475 U.S. 643, 649 (1986); United Brotherhood of Carpenters and Joiners v. Desert

13   Palace, Inc., 94 F.3d 1308, 1310 (9th Cir. 1996).

14           In this case, Plaintiff GWI seeks a declaration that the 2004 Kaleidoscope Agreement

15   requires the parties to arbitrate their dispute regarding the termination of the distribution

16   relationship in San Diego under the set of rules specified in that Agreement.  Although Defendant

17   CBS was not a signatory to the 2004 Kaleidoscope Agreement, Plaintiff GWI argues CBS is

18   bound by the terms of the original 2004 Kaleidoscope Agreement, including the arbitration clause

19   contained therein.  See Comedy Club, Inc. v. Improv W. Assoc., 553 F.3d 1277, 1287 (9th Cir.

20   2009) (noting that arbitration clauses may bind non-parties such as an assignee or third party

21   beneficiary); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1406 (9th Cir. 1994) (noting that

22   non-party to original agreement may be bound by forum selection clause if the contracting party

23   was an authorized agent of the non-party).

24           Notwithstanding the general principle that an assignee is impliedly bound by the terms of

25   the original contract, including any arbitration provision, in this case there is a written agreement

26   documenting the assignment of rights by Kaleidoscope to CBS.  The Assignment Agreement,

27   signed by GWI, Kaleidoscope, and CBS, sets forth the scope and terms of the assignment of rights

28   from Kaleidoscope to CBS.  This Assignment Agreement itself contains an arbitration clause,

1 | providing that "[i]n the event of any dispute arising from or pertaining to this agreement, the

2 | parties agree to submit such dispute to binding arbitration before the American Arbitration

3 | Association in accordance with its rules for commercial matters."  [Caruso Decl., Exhibit 1D, p.

4 | 3.]  This is the very sort of language that the Ninth Circuit has held requires decision by the

5 | arbitrator regarding the scope of the claims to be arbitrated.  Chiron Corp. v. Ortho Diagnostic

6 | Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (where arbitration clause stated that "any

7 | dispute, controversy or claim arising out of or relating to the validity, construction, enforceability

8 | or performance of this Agreement shall be settled by binding Alternate Dispute Resolution

9 | ('ADR') in the manner described below," the question of whether a prior court judgment has res

10 | judicata effect should be submitted to arbitrator); United Brotherhood, 94 F.3d at 1310 (where

11 | parties agreed that all disputes "regarding the interpretation or application of the provisions of this

12 | Agreement ..." would be submitted to arbitration, it was for the arbitrator, in the first instance, to

13 | decide the question of arbitrability).

14 |     The Assignment Agreement unambiguously states that "any dispute"  under the agreement

15 | must be submitted to binding arbitration.  Under the AAA Commercial Arbitration Rule 7, the

16 | arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections

17 | with respect to the existence, scope or validity of the arbitration agreement."  Plaintiff GWI has

18 | cited no authority which would require this Court ignore the arbitration clause contained in the

19 | parties' written and executed Assignment Agreement, and instead allow Plaintiff GWI to proceed

20 | under the theory that Defendant CBS is impliedly bound by the arbitration clause contained in

21 | GWI's prior agreement with Kaleidoscope.  Neither the Chan nor the Comedy Store case, upon

22 | which Plaintiff GWI relied at the hearing on this motion, requires the Court to disregard the

23 | arbitration clause contained in the written Assignment Agreement between the parties to this

24 | action, in order to enforce the conflicting arbitration clause in the 2004 Kaleidoscope Agreement.

25 | The Court finds the arbitration clause contained in the written Assignment Agreement, signed by

26 | all of the parties, governs the arbitrability of disputes arising out of the assignment.

27 |     The arbitration clause contained in the Assignment Agreement provides that "any dispute

28 | arising from or pertaining to" that agreement would be submitted to binding arbitration before the

1   AAA in accordance with its rules for commercial matters.  Thus, the question of whether the

2   parties intended CBS's newly-acquired distribution rights to be subject to arbitration under the

3   provision of the 2004 Kaleidoscope, or instead intended such rights to be enforceable under the

4   provision of the parties' 1998 Distribution Agreement, must itself be arbitrated by the AAA

5   according to the terms of the Assignment Agreement.  The Court GRANTS Defendant CBS's

6   motion to dismiss this action under the Federal Arbitration Act.

### *Conclusion*

8      For the reasons set forth herein, the Court DENIES Defendant CBS's motion to dismiss for

9   lack of personal jurisdiction, under the first-to-file rule, and based on the doctrine of *forum non*

10  *conveniens*.  The Court GRANTS Defendant CBS's motion to dismiss this action under the

11  Federal Arbitration Act.

12      Pursuant to the parties' Assignment Agreement, the question of whether Defendant CBS

13  can include in its pending arbitration proceeding before the AAA in Minnesota its claims against

14  Plaintiff GWI, arising out of the 2004 Kaleidoscope Agreement, must itself be determined by

15  binding arbitration before the AAA according to its rules for commercial matters.  Plaintiff GWI's

16  motion for preliminary injunction is DENIED as moot.  The Clerk is directed to close this case

17  subject to reopening following completion of the arbitration.

18      **IT IS SO ORDERED**.

20  **DATED:  October 8, 2009**

21

22                    **IRMA E. GONZALEZ, Chief Judge**
                           **United States District Court**